50 CCPA

**Application of Lovel R. SIMMONS and James T. Monk, Jr.**

**Patent Appeal No. 6949.**

United States Court of Customs and Patent Appeals.

March 13, 1963.

---

4. Reg. No. 335,015 to Franklin McVeagh and Co.

**556**

Olson, Trexler, Wolters & Bushnell, Robert M. Wolters, Chicago, Ill., Charles L. Sturtevant, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel) for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–9 in application Ser. No. 673,835, filed July 24, 1957, for "Tractor With Selectively Appliable Weight Transfer For Traction Wheels Thereof And A Traction-Wheel-Driving Differential With Lock-Up Selectively Applicable Concurrently With Application of Weight Transfer."

The sole issue is obviousness in view of prior art under 35 U.S.C. § 103.

Appellants' invention is the combination of a tractor, an earth-hauling vehicle towed thereby, and cooperative mechanisms for limiting the tendency of one or the other of the tractor's rear driving wheels to spin due to insufficient traction. One such mechanism is an hydraulically-operated, inclined, extensible hydraulic strut, attached at its lower end to the rear of the tractor frame, the upper end being attached to the front of the earth-hauling vehicle's frame at a point considerably higher than the point of attachment of the strut to the tractor. The introduction of pressurized fluid into the cylinder of the strut drives a piston-like plunger rearward and upward, thereby tending to release some of the weight from the front wheels of the earth-hauling vehicle. The weight released from the front wheels of the towed vehicle is transferred in part to its rear wheels and in part to the rear wheels of the tractor, thereby increasing the traction of the latter wheels. This mechanism and associated structures, which we need not further describe, are designated as "weight transferring hitch means" in claim 1, infra. An hydraulic hose line connects the cylinder of the strut to a tractor-engine-activated pump and hydraulic fluid source. Fluid flow to the cylinder is controlled by a valve operated through mechanical linkages by the operator of the tractor.

Appellant's second tractor-wheel-spin-limiting mechanism amounts to a known differential lock-up,[1] two forms of which are disclosed, one manually operable and the other hydraulically operable by means of a hydraulic ram. The latter form of differential lock-up is shown as connected, through a secondary hydraulic hose line and a manually operable differential lock-up control valve, to the first mentioned hydraulic hose line. The position of the control valve (i. e., whether open or closed) determines whether or not the differential lock-up will be activated simultaneously with the "weight transferring hitch means."[2]

---

1. A differential is a mechanism used in the rear axles of most automobiles, tractors, etc., for transferring torque from a drive shaft to the driven vehicle wheels. The gearing in a differential is such that independent motion of the driven vehicle wheels is possible. One disadvantage of such a device is that if one driven wheel encounters a slippery surface and begins to spin, negligible torque will be delivered to the other driven wheel, thereby rendering ineffective for driving purposes the application of torque to the other wheel. A differential lock-up overcomes this disadvantage by prohibiting independent motion of the driven wheels. In effect, it disables the differential, joining the two wheels rigidly as though they were fixed on a rigid axle.

2. Appellant considers such simultaneous activation desirable because if conditions under which the tractor is operated are so adverse that a transfer of weight to the rear wheels of the tractor would not prohibit one or the other of the tractor

Claim 1, which, for the purposes of this appeal, is admitted to be indistinguishable from claim 9, reads as follows:

"1. In a tractor vehicle adapted for propelling a second vehicle articulately coupled thereto and adapted to receive traction-improving weight from the second vehicle, tractor-supporting traction type propelling elements engaged with the ground at spaced-apart positions thereon, weight transferring hitch means connectable with the second vehicle to establish the articulate coupling of the tractor vehicle thereto and energizable to transfer weight from the second vehicle onto the propelling elements in different relative amounts depending upon the attitude of the tractor vehicle such as relative to the verticle [sic], or to the hitch means, a selective lock-up type differential through which propelling force is differentially transmittable to the propelling elements during non-lock-up and independently transmittable to such elements during lock-up, control means for selectively energizing or deenergizing the weight transferring means, and means for selectively effecting lock-up or non-lock-up of the differential concurrently with energization of the weight-transferring means."

Claims 2–8 are more specific than claims 1 and 9 in that they are directed to a device wherein differential lock-up occurs *under the control of* the means for controlling the activation of the weight transfer mechanism. The patentability of claim 5 and dependent claims 6 and 7 is urged on the basis of the recitations therein that the "differential control means" is "*settable* for operation under control of the weight transferring control means" (our emphasis) thereby more explicitly including the differential lock-up control valve in the claims. Inasmuch as claim 4 includes a similar recitation, we have grouped this claim with claims 5–7.

wheels from spinning, a momentary hesitation in the activation of the differential

The references relied on are:

| | | |
|---|---|---|
| Simmons | 2,459,098 | Jan. 11, 1949 |
| Mayer et al. | 1,212,795 | Jan. 16, 1917 |
| Miller | 1,142,831 | June 15, 1915 |

A discussion of the content of these references is unnecessary in view of the following statements in appellants' brief:

"The Simmons patent No. 2,459,098, discloses a weight-transferring hitch structure 12 identical with that of the present application, and the hydraulic circuit and controls for the hitch structure of the patent and of this application are identical excepting for the tap into the hose line 75 shown in Fig. 3 of this application to enable the differential lock-up mechanism of such Fig. 3 to operate in response to and under control of the operation of the weight-transferring hitch.

"The Mayer patent No. 1,212,795 and the Miller patent No. 1,142,831 disclose differentials capable of being locked up, and it can be assumed for the purpose of the ensuing argument that these two lock-up differentials are identical with the present applicants' lock-up differential."

The Patent Office position is that all of the claims are unpatentable because it would be obvious to substitute a lock-up differential of the type shown by either Miller of Mayer et al. for the differential disclosed by Simmons and to actuate both the lock-up and hydraulic strut together by a common hydraulic control.

With respect to broad claims 1 and 9, all that appellants have recited in these claims is the mere addition of a differential lock-up to the weight shifting device disclosed in the Simmons patent. In view of the well known nature and attributes of a differential lock-up, such an addition to the Simmons structure would be obvious if wheel-spinning were encountered therein or if, for any other reason, use of a differential lock-up appeared to be desirable.

lock-up would result in the tractor losing some of its forward momentum.

Claims 2–8, as previously noted, recite a specific cooperative relationship between the differential lock-up and the weight transferring mechanism, wherein the latter is *controlled by* the former so that both mechanisms may be operated together through actuation, by the operator, of a single manual control.

The board stated on request for reconsideration:

"The idea of using a single control to actuate two branches or two stages of an apparatus is quite common in various arts. We found no patentability in the substitution of a lock-up type of differential for the differential disclosed by Simmons. In such a substitution, we find no further patentability in the concept of actuating the differential lock-up and the weight transfer mechanism through a common control."

We find a similar statement concerning the common use of a single hydraulic pump to actuate different fluid operated parts of a vehicle in the first action on the case by the examiner. Neither in the record, nor in appellants' brief here, do we find any statements by appellants controverting this allegation by the Patent Office concerning the state of the art. We feel the board was entirely justified in holding that one skilled in the art, desiring to add a differential lock-up to the device of the Simmons patent, would know of the prior practice of simultaneously operating various mechanisms through a common control and that it would be obvious for him to connect a fluid operated differential lock-up to the hydraulic hose line of Simmons already used therein to drive the weight transferring mechanism.

■■ Appellants' counsel was rather insistent in argument that there must be a reference of record to support the assertion that common control of several hydraulic devices simultaneously is known in the art and says in his brief that in the absence of such a reference "the Court has no authority to assume

that it would have been obvious, and consequently must hold it to be unobvious."

In the instant case we hardly think a reference is required to support the Patent Office position on what one of ordinary skill in the art would know on this subject, bearing in mind that most of us ride daily in automobiles wherein four brakes are hydraulically actuated simultaneously by the pressure of one foot. While the public generally may not be familiar with the mechanism by which this is accomplished, certainly all automotive mechanics are.

The sole remaining question is the patentable significance of the inclusion in claims 4–7 of the recitations directed to the differential lock-up control valve. We cannot see wherein the use of a control or cut-off valve in one branch of a multiple branch hydraulic fluid control line produces any unexpected results or would be an unobvious expedient.

The decision of the board is affirmed.

Affirmed.